IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES of America *ex rel.*
*[FILED IN CAMERA AND UNDER SEAL]*

          Plaintiffs,

    vs.

*[FILED IN CAMERA AND UNDER SEAL]*

          Defendant.

**SA99CA0496**

Case No.

)
)  COMPLAINT FOR VIOLATION OF
)  THE FALSE CLAIMS ACT
)  [31 U.S.C. §§ 3729, *et seq.*]
)
)  JURY TRIAL DEMANDED
)
)  *[FILED IN CAMERA AND UNDER*
)  *SEAL]*
)
)

Respectfully submitted,

*Thomas W. Mills, Jr.*

Thomas W. Mills, Jr.
State Bar No. 14157500
Jonathan M. Spigel
State Bar No. 18934760

MILLS ✶ PRESBY AND ASSOCIATES, L.L.P.
5910 North Central Expressway, Suite 900
Dallas, Texas 75206-5141
Telephone: (214) 265-9265
Facsimile:   (214) 265-9257

and Co-Counsel

Phillip E. Benson
333 City Boulevard West, Suite 1410
Orange, California 92868
Telephone: (714) 634-4534
Facsimile: (714) 634-4528

Attorneys for *Qui Tam* Plaintiff
*[FILED IN CAMERA AND UNDER SEAL]*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES of America *ex rel.* SUSAN STURROCK, | ) | Case No.: |
| | ) | |
| | ) | COMPLAINT FOR VIOLATION OF |
| Plaintiffs, | ) | THE FALSE CLAIMS ACT |
| | ) | [31 U.S.C. §§ 3729, *et seq.*] |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| TENET HEALTHCARE CORPORATION, | ) | *[FILED IN CAMERA AND UNDER* |
| a California corporation, and SOUTHWEST | ) | *SEAL]* |
| GENERAL HOSPITAL, a Texas corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW *qui tam* relator Susan Sturrock, on behalf of the United States pursuant to 31

U.S.C. § 3730(b)(1), and alleges as follows:

**I.**

**JURISDICTION**

1.      Jurisdiction of the claims asserted herein under the False Claims Act is based upon

federal subject matter pursuant to 31 U.S.C. § 3729 *et seq.* and 28 U.S.C. § 1331.

**II.**

**VENUE**

2.      Venue in the Western District of Texas is based upon 31 U.S.C. § 3732(a) and the

fact that the Defendants either can be found in, reside in, transact business in, or have performed acts

proscribed by 31 U.S.C. § 3729 *et seq.*, in this district. Further, the matters complained of occurred in this district.

## III.

## PARTIES

3.      The *qui tam* Plaintiff, Susan Sturrock, is a resident and citizen of the United States and the State of Texas. She is employed by defendant Southwest General Hospital as a Medical Intensive Care Unit Staff Nurse. There have been no public disclosures of the violations complained of herein, but if any such disclosure has occurred, the *qui tam* Plaintiff is the original source of the information.

4.      Defendant, Tenet Healthcare Corporation (hereinafter "Tenet"), is a health care organization organized and existing under the laws of the State of California. Tenet owns and operates approximately 130 acute care (with over 30,000 licensed beds) and 23 specialty hospitals in 18 states, including defendant Southwest General Hospital in San Antonio, Texas.

5.      Defendant, Southwest General Hospital (hereinafter "SWGH") is a Texas corporation located in San Antonio, Texas. SWGH is an acute care hospital owned and operated by Tenet, with approximately 286 licensed beds. SWGH has numerous departments, however, for purposes of this suit, relator's *qui tam* allegations concerning fraudulent conduct committed by Defendants relate to SWGH's Emergency Care, Intensive Care and Wound Care/Hyperbaric Treatment units or departments.

## IV.

## FACTUAL ALLEGATIONS

6.      Dating back as far as 1989 and earlier, and continuing to the present, SWGH has and

continues to have inadequate facilities and staffing of its Intensive Care and Emergency Room Units.

Specifically, there are 10 beds available for intensive care patients in SWGH's Intensive Care Unit

(ICU).  Frequently, SWGH's ICU was and is understaffed with qualified nurses.  When the ICU

reached or was near its capacity for ICU patients, unqualified nurses from other units, including but

not limited to emergency, labor and delivery and medical/surgery, who had no ICU experience, and

some of whom could not read the ICU monitors, often had to be relied on for treatment of the ICU

patients.

7.      When SWGH's ICU facilities and staffing were stretched to their capacity, SWGH

would allow the Emergency Room patients to stack up in the Emergency Room.  This created an

additional need for qualified emergency room nurses, however, as with the ICU department,

unqualified nurses, with no Emergency Room experience, often had to make up for the Emergency

Room qualified nurse staffing.  The practice by SWGH with respect to the staffing of its Emergency

Room and Intensive Care Units resulted in patients having to spend the night, and sometimes up to

48 hours in the Emergency Room, rather than transfer the patient to another hospital and risk losing

Medicare funds associated with the treatment of that patient.

8.      When SWGH's Emergency Room would stack up with patients, with some patients

having to spend up to 48 hours in the Emergency Room, rather than be transferred to another local

hospital that had adequate facilities and staff to treat the patient, Medicare would be charged

COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT
JURY TRIAL DEMANDED                                                                              Page 4

medical/surgery or ICU nurse rates and associated fees to cover up for the Emergency Room facilities and staffing inadequacies. Moreover, billing records were falsified to reflect that a patient had been in the Emergency Room for a shorter period of time to cover up SWGH's practice of allowing emergency room patients to stack up in its Emergency Room. A cross-reference to the nurses' notes for a particular patient would reflect treatment of that patient for a much longer period of time than reflected in the patients' billing records reflected. The lack of bed space and staffing led to excessive time spent by the patient in SWGH's Emergency Room, which would be reflected in the nurses' notes and related documents other than the patient's billing records. This practice led to inadequate care being given to the patient while, at the same time, allowing SWGH to maximize its billings to Medicare by maximizing the number of Medicare patients it could treat, by whatever means possible.

9.    A second and more flagrant example of the fraudulent conduct and billing practices perpetrated upon the United States Government by SWGH, and, by implication its owner and operator, Tenet, was the operation of SWGH's Wound Care/Hyperbaric Unit. This unit provided hyperbaric treatment for patients with varying degrees of wounds. Hyperbaric treatment is essentially a concentrated amount of oxygen applied to a wound site for a specified period of time. The concentrated oxygen allows the wound to heal quicker than it would on its own, without the specialized treatment in the hyperbaric chamber.

10.    Medicare allows for SWGH and other hospitals to charge up to $600 for each hyperbaric treatment a patient receives. Additionally, Medicare only allows for a maximum of 14 weeks of such treatment. Moreover, only 4-5 specific diagnoses permit this specialized wound care

treatment. In pursuing its pattern of fraudulent conduct designed to maximize its billings to Medicare, SWGH, in the operation of its Wound Care/Hyperbaric Unit, primarily at the direction of Dr. McIntyre, the Director of the Wound Care and Hyperbaric Unit, would falsify diagnoses of patients so that they would fit within the accepted diagnoses for the hyperbaric treatment. In other words, patients whose wounds were not that severe or otherwise did not qualify for such specialized wound care treatment were referred to the Hyperbaric Unit anyway. Moreover, patients would routinely be treated in the Hyperbaric Unit for the maximum of 14 weeks even when their actual diagnoses did not justify such treatment in the first place, or their justified treatment achieved the maximum medical improvement prior to the 14 week cut-off. Patient records and their diagnoses were falsified by nurses and doctors in the Hyperbaric Unit, including the Director of the Unit, Dr. McIntyre, to maximize billings to Medicare. After the patient had been run through SWGH's Hyperbaric Unit for the maximum 14 week period, the patient was customarily referred to doctors outside SWGH, for continued unnecessary wound care treatment.

## V.

## CAUSE OF ACTION FOR VIOLATION OF

## THE FALSE CLAIMS ACT (31 U.S.C. § 3729)

11.     Plaintiff incorporates by reference paragraphs 1 through 10 inclusive of this complaint as if fully set forth herein.

12.     Medicare, an agency of the United States Government, provides federal monies for the treatment of certain qualifying patients at qualifying hospitals. SWGH, owned and operated by

---

Tenet, provides treatment to Medicare patients and receives payment for such services based upon the authenticity and appropriateness of such treatment.

13.    Since 1989, and prior to that time, SWGH, owned and operated by Tenet, has provided medical treatment to qualified Medicare patients and has billed Medicare accordingly.

14.    SWGH has knowingly misrepresented to Medicare that the services it has provided and charged for are appropriate under the Medicare Rules for Billing.  The misrepresentations include the charges for inadequate services rendered in the Intensive Care and Emergency Room Units, based upon inadequate facilities and staffing.  The misrepresentations also include falsification of patient records, including but not limited to falsification of time spent in the Emergency Room and diagnoses, which are otherwise appropriate for hyperbaric treatment.  The misrepresentations also include maximizing the hyperbaric treatment when it is otherwise unnecessary or has served its purpose prior to the expiration of the 14 week maximum treatment period.

15.    As a result of SWGH's and Tenet's knowing misrepresentations, false statements and the knowing concealment of material facts designed to mislead Medicare with regard to SWGH's fraudulent and noncompliant conduct, *inter alia*, Medicare has provided monies derived from the U.S. Treasury to SWGH.

16.    Accordingly, between 1989 and the present, SWGH has knowingly submitted and caused to be submitted false statements in support of false claims for payment to the United States, all in violation of the False Claims Act.  As a result of such knowing submissions of false statements

and claims, the Defendants have received payments of monies derived from the United States Treasury.

WHEREFORE, *qui tam* Plaintiff prays for relief as follows:

1. Full restitution to the United States of monies wrongfully obtained by the Defendants;

2. Three times the dollar amount shown to have been wrongfully charged and paid by the United States;

3. For maximum civil penalties for all false records, statements, certifications, and claims submitted to the United States;

4. For costs of suit, reasonable expenses and reasonable attorney's fees;

5. For the statutory *qui tam* share of the recovery obtained by the United States, and

6. For such other and further relief as the Court deems just and proper.

Dated: May 17, 1999.

## JURY DEMAND

Plaintiffs request a trial by jury on all issues.

Respectfully submitted,


*Thomas W. Mills, Jr.*

Thomas W. Mills, Jr.
State Bar No. 14157500
Jonathan M. Spigel
State Bar No. 18934760

MILLS ✶ PRESBY AND ASSOCIATES, L.L.P.
5910 North Central Expressway, Suite 900
Dallas, Texas 75206-5141
Telephone: (214) 265-9265
Facsimile:  (214) 265-9257

and Co-Counsel

Phillip E. Benson
333 City Boulevard West, Suite 1410
Orange, California 92868
Telephone: (714) 634-4534
Facsimile:  (714) 634-4528

Attorneys for *Qui Tam* Plaintiff
Susan Sturrock

---

COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT
JURY TRIAL DEMANDED                                    Page 9